1

2

3

4            UNITED STATES DISTRICT COURT

5            NORTHERN DISTRICT OF CALIFORNIA

6

7    DIANNE HUNTSBERRY,                          Case No. 16-cv-00929-HSG

8                  Plaintiff,                    **ORDER DENYING PLAINTIFF'S
                                                 MOTION FOR SUMMARY JUDGMENT**
9          v.                                    **AND GRANTING DEFENDANT'S
                                                 MOTION FOR SUMMARY JUDGMENT**
10   NANCY A. BERRYHILL,
                                                 Re: Dkt. Nos. 14–15
11                 Defendant.

12         Defendant Nancy A. Berryhill is the Acting Commissioner of the Social Security

13   Administration ("SSA"). The former Acting Commissioner, Carolyn Colvin, acting in her official

14   capacity, denied Plaintiff Dianne Huntsberry's application for disability insurance benefits

15   ("DIB") and supplemental security income ("SSI"). Dkt. No. 1. Plaintiff seeks judicial review of

16   that decision. *Id.* On June 29, 2016, Defendant lodged the administrative record with the Court.

17   Dkt. No. 11. Plaintiff timely filed her motion for summary judgment on August 16, 2016, Dkt.

18   Nos. 14 ("Pl.'s MSJ"); Defendant timely filed a cross-motion for summary judgment on

19   September 14, 2016, Dkt No. 15 ("Def.'s MSJ"); and Plaintiff filed a untimely reply brief on

20   October 3, 2016, Dkt. No. 16; *see also* Dkt. No. 4 (14 days from service of cross motion to reply);

21   Dkt. No. 13 (scheduling stipulation not affecting reply date). The Court finds that this matter is

22   appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil

23   L.R. 7-1(b). For the reasons set forth below, the Court **DENIES** Plaintiff's motion for summary

24   judgment and **GRANTS** Defendant's motion for summary judgment.

25   **I.    BACKGROUND**

26         **A.    Factual Background**

27         Plaintiff was born in 1959. AR 242. She completed two years of college and worked as a

28   security guard, in a probation department, as a fire watcher, and as a daycare worker. AR 247.

### 1. Plaintiff's Medical Condition

Plaintiff alleges that she has suffered from depression and anxiety since March 13, 2013. AR 18. She has not worked since the alleged onset date, and was most recently employed with Intercon Security as a security guard at the DMV. AR 30, 62. Plaintiff testified that she stopped working "[d]ue to stress and being threatened on the job." AR 30. A male supervisor yelled at her while standing so close that his spittle landed on her face; he cornered her in a back office; and he "pointed his finger in her chest." AR 363. Plaintiff claims that she has been unable to work in a different environment due to anxiety attacks, loss of focus, and the stress from losing her mother. AR 31–32; *see also* AR 363 (describing Plaintiff's unresolved grief from mother's death in October 2012, Plaintiff's estrangement from siblings due to disputes over her mother's end-of-life care, and Plaintiff's inability to keep food down after her mother's death, causing her to lose 75 pounds in 5 months). In addition, Plaintiff was the victim of domestic violence during a thirteen-year-long marriage. AR 363. Plaintiff testified that she suffered from insomnia, memory problems, and difficulty being around groups of people. AR 32–33. However, she testified that she was able to lift about 20 pounds, get up and down stairs, walk continuously for approximately one-half to one block, and perhaps stand for 10 to 15 minutes. AR 36.

### 2. Plaintiff's Medical Treatment

Plaintiff received medical treatment from several different providers. She received treatment at Kaiser Permanente from March 2013 to May 2013, South County Self-Sufficiency Center on April 2, 2013, and the Schuman-Liles Clinic from May 2013 to May 2014.

a. <u>Kaiser Permanente</u>

Between March 11 and May 8, 2013, Plaintiff received treatment from the following healthcare providers at Kaiser Permanente: Dr. Marc Nelson, Ms. Gabriela Kremer, Dr. Margaret Chao, Dr. Jianne Gimian, Dr. David Atkins, Dr. Stephanie Shippen, and Ms. Jenica Babbit-Pearce. AR 320–337, 344–96. On March 11, 2013, Plaintiff received treatment in the Emergency Department from Dr. Nelson and Ms. Kremer, a registered nurse, for headaches, back and chest pains, anxiety, and depression. AR 320–337. On March 12, 2013, Plaintiff received treatment at the Crisis Clinic from Dr. Chao, who noted that Plaintiff presented "multiple compounding

2

1  psychosocial stressors" and recommended group therapy. AR 344–50. On March 15, 2013,

2  Plaintiff returned to the Crisis Clinic and saw Dr. Gimian, who diagnosed her with acute stress

3  disorder. AR 351–53. Dr. Gimian referred her to a psychiatrist for a medical evaluation. AR 352.

4  On March 18, 2013, Plaintiff met with a psychiatrist, Dr. Atkins, who diagnosed her with major

5  depressive disorder "in the setting of severe social stressors." AR 354–361. On March 19, 2013,

6  Plaintiff met with another psychologist, Dr. Shippen, who also diagnosed her with acute stress

7  disorder. AR 362–71. On March 21, 2013, Plaintiff attended a group therapy session with Ms.

8  Babbit-Pearce, a social worker, but decided not to continue because hearing others' problems

9  made her feel more anxious. AR 372–73, 375. Plaintiff met again with Dr. Shippen on March 26,

10 2017, and had six follow-up telephone calls with Dr. Shippen between March 26 and May 1, 2013,

11 without any change in diagnosis. AR 374–92. Plaintiff met again with Dr. Atkins on May 8,

12 2013, and reported that her symptoms of depression were slightly worse since the last visit,

13 resulting in no change of diagnosis or medication. AR 393–96.

14                    b.   South County Self-Sufficiency Center

15       Plaintiff was treated by Dr. Bob Kennedy of the South County Self-Sufficiency Center on

16 April 2, 2013, as reflected in the "check-the-box" form that he filled out. AR 337–41. On a 4-

17 point scale, Dr. Kennedy gave Plaintiff rankings of 3 on measures of understanding and memory,

18 rankings from 2 to 4 on measures of concentration and persistence, rankings of 2 to 3 on measures

19 of sustained concentration and persistence, and rankings of 3 on measures of adaption—where 2

20 meant "not significantly limited," 3 meant "moderately limited" and 4 meant "markedly limited."

21 AR 338–39. He reported that Plaintiff's mental health condition would prevent her from working

22 for at least 12 months, while contradictorily reporting that she did not have any work restrictions

23 relating to her mental health conditions. AR 340.

24                    c.   Schuman-Liles Clinic

25       Plaintiff was treated at the Schuman-Liles Clinic from May 21, 2013 until at least May 31,

26 2014. AR 425–49. During that time, three doctors treated Plaintiff: Dr. Monika Do Valle (one

27 visit), Dr. Christopher Stauffer (one visit), and Dr. Michael Hipolito (four visits). *Id.* On May 21,

28 2013, Dr. Do Valle diagnosed Plaintiff with (1) generalized anxiety disorder and (2) moderate

3

1    major depression, recurrent episode.  AR 447.  As to Plaintiff's mental exam, Dr. Do Valle

2    observed as follows:  Plaintiff's appearance, behavior, speech, thought process, orientation,

3    attention, and memory were all within normal limits; her mood/affect and concentration were not.

4    *Id.*  On November 9, 2013, Dr. Christopher Stauffer repeated the same diagnoses and mental

5    observations.  AR 444.  So did Dr. Hipolito on January 4 and January 25, 2014.  AR 435, 439.  On

6    March 31 and May 31, 2014, Dr. Hipolito repeated the same diagnoses, and observed as follows:

7    Plaintiff's appearance, behavior, speech, thought process, orientation, insight, and judgment were

8    within normal limits; her mood/affect was not within normal limits; and she "denie[d] SI/HI."[1]

9    AR 427–28, 431.  In uniformly concluding that Plaintiff's appearance was within normal limits,

10   each of these doctors noted that Plaintiff was "neatly groomed" and "clean."  AR 427, 431, 435,

11   439 (Dr. Hipolito); AR 444 (Dr. Stauffer); AR 447 (Dr. Do Valle).  Also on May 31, 2014, Dr.

12   Hipolito completed a mental medical source statement, opining that Plaintiff had "moderate"

13   limitations in five areas of work-related mental functions and "marked" limitations in fifteen other

14   such areas.  AR 422–23.[2]

### 3.   Views of Non-Examining State-Agency Psychologists

16        Two non-examining State-agency psychologists, Dr. Jon Etienne Mourot and Dr. Anna

17   Franco, made determinations regarding Plaintiff's residual functional capacity ("RFC").  In his

18   June 24, 2013 initial-level RFC assessment, Dr. Mourot opined as follows:  "[Plaintiff] retains the

19   capacity to do simple repetitive 1–2 step tasks with limited public and interpersonal contact.

20   UNSKILLED."  AR 61, 74.  In her September 24, 2013 reconsideration-level RFC assessment,

21   Dr. Franco adopted the same opinion word for word.  AR 91, 106.

---

[1] "SI" likely refers to suicidal ideation.  *See* AR 427, 431 ("SUICIDAL IDEATION:  No."); AR 428, 432 ("[Plaintiff] endorsed passive SI in March 2013 but disposed of guns that she had at home.").  "HI" likely refers to homicidal ideation.  *See* AR 428, 432 ("HOMICIDAL IDEATION: No.").

[2] A "moderate" limitation meant that Plaintiff was "[a]ble to perform designated work-related mental functions, but will have limitations that impair the effective performance of the task incrementally for a total of between 11% and 20% of an 8-hour workday or 40 hour workweek."  AR 422.  A "marked" limitation meant that Plaintiff was "[a]ble to perform designated work-related mental functions, but will have limitations that impair the effective performance of the task incrementally for a total of more than 20% of an 8-hour workday or 40 hour workweek."  *Id.*

4

## B. Legal Framework of the Social Security Act

To qualify for DIB or SSI, the claimant must be "disabled" as defined by the Social Security Act ("Act"). Both benefit programs define disability as an individual's inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); *id.* § 1382c(a)(3)(A); *see also* 20 C.F.R. § 404.1505; *id.* § 416.905.[3] The SSA deems a person disabled

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A); *id.* § 1382c(a)(3)(B).

### 1. Five-Step Process for Evaluating Claimant's Disability Claim

When the claimant is dissatisfied with the initial and reconsidered decisions by the SSA, the claimant may request a hearing in front of an administrative law judge ("ALJ"). 20 C.F.R. §§ 404.929, 416.1429. The ALJ will issue a new decision based on the preponderance of the

---

[3] All citations to the Code of Federal Regulations refer to the 2014 edition that was effect when the ALJ's opinion was issued. Although certain relevant regulations have been updated since the issuance of the final decision on Plaintiff's disability claims, the SSA has indicated that those regulations will not apply retroactively. Specifically, on September 26, 2016, the SSA published the final rules revising criteria used to evaluate DIB and SSI claims involving mental disorders in adults and children. *See* Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66,137 (Sept. 26, 2016). These final rules became effective on January 17, 2017. *Id.* at 66,138. However, the SSA

> expect[s] that Federal courts will review [its] final decisions using the rules that were in effect at the time [it] issued the decisions. If a court reverses [the SSA's] final decision and remands a case for further administrative proceedings after the effective date of these final rules, [the SSA] will apply these final rules to the entire period at issue in the decision [it] make[s] after the court's remand.

*Id.* at 66,138 n.1. As such, the Court does not apply these new regulations.

5

1 evidence developed in the hearing record and in the file. *Id.* §§ 404.929, 416.1429. To determine

2 whether the claimant qualifies for disability benefits, the ALJ utilizes a five-step sequential

3 evaluation process. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

4         a. Step One: Substantial Gainful Work Activity

5   At Step One, the ALJ determines whether the claimant is currently engaged in work

6 activity that is substantial and gainful. *Id*. § 404.1520(a)(4)(i), (b); *id*. § 416.920(a)(4)(i), (b).

7 Substantial work activity "involves doing significant physical or mental activities . . . even if it is

8 done on a part-time basis" or requires "do[ing] less, get[ting] paid less, or hav[ing] less

9 responsibility than when [the claimant] worked before." *Id*. §§ 404.1572(a), 416.972(a). "Gainful

10 work activity is work activity that [the claimant] do[es] for pay or profit . . . whether or not a profit

11 is realized." *Id.* §§ 404.1572(b), 416.972(b). If the claimant is engaged in substantial gainful

12 activity, then the claimant is not disabled, regardless of any medical condition or the claimant's

13 age, education, or work experience. *Id.* § 404.1520(a)(4)(i), (b); *id*. § 416.920(a)(4)(i), (b).

14         b. Step Two: Medical Severity of Impairment

15   If the claimant is not presently engaged in substantial gainful activity, then the ALJ

16 determines whether the claimant's alleged impairments are medically severe. *Id*. §

17 404.1520(a)(4)(ii), (c); *id.* § 416.920(a)(4)(ii), (c). If the claimant lacks "any impairment or

18 combination of impairments which significantly limits [the claimant's] physical or mental ability

19 to do basic work activities," then the impairments are not severe. *Id.* §§ 404.1520(c), 404.1521(a),

20 416.920(c), 416.921(a). "Basic work activities" are "the abilities and aptitudes necessary to do

21 most jobs," including physical functioning, sensory capacity, following instructions, use of

22 judgment, and responding appropriately to routine work situations (including supervision and

23 interactions with coworkers), and dealing with changes to work routines. *Id.* §§ 404.1521(b),

24 416.921(b).

25   In addition, to evaluate alleged mental impairments in adults, the ALJ also considers the

26 claimant's pertinent symptoms, signs, and laboratory findings to determine whether she has a

27 determinable mental impairment. 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). If the ALJ finds

28 that the claimant has a determinable medical impairment, she then rates the degree of resulting

functional limitation. *Id.* §§ 404.1520a(b)(2), 416.920a(b)(2). The ALJ measures the degree of

resulting functional limitation by evaluating four functional areas: (1) activities of daily living; (2)

social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation.

*Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). For the first three areas, the ALJ will rate the degree of

limitation based on a five-point scale:  none, mild, moderate, marked, and extreme. *Id.* §§

404.1520a(c)(4), 416.920a(c)(4). For the last area, the ALJ will rate the degree of limitation based

on four-point scale:  none, one or two, three, four or more. *Id.* §§ 404.1520a(c)(4),

416.920a(c)(4). To determine whether the alleged mental impairment is severe, the ALJ considers

these ratings, as well as any other evidence indicating more than a minimal functional limitation.

*See id.* §§ 404.1520(d)(1), 416.920(d)(1).[4] Additionally, "[u]nless [the claimant's] impairment is

expected to result in death, it must have lasted or must be expected to last for a continuous period

of at least 12 months." *Id.* §§ 404.1509, 404.1520(a)(4)(ii), 416.909, 416.920(a)(4)(ii). If the

claimant does not meet these requirements, then she is not disabled, regardless of any medical

condition or the claimant's age, education, or work experience. *Id.* § 404.1520(a)(4)(ii), (c); *id.* §

416.920(a)(4)(ii), (c).

### c. Step Three:  Listed Impairment

If the claimant has a severe impairment, the ALJ proceeds to Step Three and determines

whether the claimant's impairment, or combination of impairments, medically "meets or equals"

an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1 ("App. 1"). *Id*. § 404.1520(a)(4)(iii),

(d); *id*. § 416.920(a)(4)(iii), (d); *see also id.* §§ 404.1525, 416.925 (describing Appendix 1's

purpose, organization, and use). A claimant's impairment is medically equivalent to a listed

impairment if it is "at least equal in severity and duration to the criteria of any listed impairment."

*Id.* §§ 404.1526(a), 416.926(a). If the claimant's impairment meets or exceeds the requirements of

a listed impairment, the claimant is disabled, regardless of age, education, and work experience.

---

[4] The relevant provisions state in full, "If we rate the degree of your limitation in the first three functional areas as 'none' or 'mild' and 'none' in the fourth area, we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities."  20 C.F.R. §§ 404.1520(d)(1), 416.920(d)(1).

7

1  *Id.* § 404.1520(a)(4)(iii), (d); *id.* § 416.920(a)(4)(iii), (d).

2      The listings for mental disorders in Appendix 1 are arranged into nine diagnostic

3  categories, including affective disorders (12.04) and anxiety-related disorders (12.06).  App. 1 §

4  12.00(A).  The listings typically have three sets of criteria: paragraphs A, B, and C.  *Id.*  "The

5  criteria in Paragraph A substantiate medically the presence of a particular mental disorder,"

6  whereas "[t]he criteria in paragraphs B and C describe impairment-related functional limitations

7  that are incompatible with the ability to do any gainful activity."  *Id.*  Only some of the nine

8  diagnostic categories of mental disorders have paragraph C criteria, and those additional

9  functional criteria are only considered if the paragraph B criteria are not satisfied.  *Id.*  The

10  claimant "ha[s] a listed impairment if the diagnostic description in the introductory paragraph and

11  the criteria of both paragraphs A and B (or A and C, when appropriate) are satisfied."  *Id.*

12                          d.   Step Four:  Residual Functioning Capacity and Past Relevant Work

13      If the claimant does not have a listed impairment, then at Step Four, the ALJ assesses the

14  claimant's RFC and ability to perform past relevant work.  *Id*. § 404.1520(a)(4)(iv), (e); *id*. §

15  416.920(a)(4)(iv), (e).  The ALJ first assesses all the relevant medical and other evidence in the

16  record to determine the claimant's RFC.  *Id.* §§ 404.1520(e), 416.920(e).  The claimant's RFC

17  gauges the most the claimant can do despite the claimant's limitations.  *Id.* §§ 404.1545(a)(1),

18  416.945(a)(1).  Before making a determination, the SSA is responsible for developing the

19  claimant's complete medical history.  *Id.* §§ 404.1545(a)(3), 416.945(a)(3).

20      In the RFC assessment, the ALJ assesses the claimant's physical and mental abilities, as

21  well as other abilities affected by the claimant's impairments.  *Id.* §§ 404.1545(b)–(d),

22  416.945(b)–(d).  With respect to a claimant's physical abilities, "[a] limited ability to perform

23  certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying,

24  pushing, pulling, or other physical functions (including manipulative or postural functions, such as

25  reaching, handling, stooping or crouching), may reduce [a claimant's] ability to do past work and

26  other work."  *Id.* §§ 404.1545(b), 416.945(b).  With respect to a claimant's mental abilities, "[a]

27  limited ability to carry out certain mental activities, such as limitations in understanding,

28  remembering, and carrying out instructions, and in responding appropriately to supervision,

8

1  coworkers, and work pressures in a work setting, may reduce [the claimant's] ability to do past

2  work and other work." *Id.* §§ 404.1545(c), 416.945(c). Additionally, "[s]ome medically

3  determinable impairment(s), such as skin impairment(s), epilepsy, impairment(s) of vision,

4  hearing or other senses, and impairment(s) which impose environmental restrictions, may cause

5  limitations and restrictions which affect other work-related abilities." *Id.* §§ 404.1545(d),

6  416.945(d).

7  Next, the ALJ compares the claimant's RFC with the physical and mental demands of the

8  claimant's past relevant work. *Id*. §§ 404.1520(f), 416.920(f). If the ALJ determines that the

9  claimant can still perform the past relevant work, then the claimant is not disabled. *Id*. §§

10  404.1520(f), 416.920(f). "Past relevant work" is work that the claimant has done in the past 15

11  years, that qualifies as substantial gainful activity, and that has "lasted long enough for [the

12  claimant] to learn to do it." *Id.* §§ 404.1560(b)(1), 416.960(b)(1). The ALJ will determine

13  whether the claimant can do her past relevant work by evaluating the claimant's testimony on

14  work performed in the past. *Id.* §§ 404.1560(b)(2), 416.960(b)(2). In addition, the ALJ may

15  evaluate the testimony of other people familiar with the claimant's past work, the opinions of

16  vocational experts, or other resources, such as the Department of Labor's Dictionary of

17  Occupational Titles ("DOT"). *Id.* §§ 404.1560(b)(2), 416.960(b)(2). If the claimant is found not

18  capable of performing past relevant work at Step Four, then the burden of proof shifts to the

19  Commissioner of the SSA ("Commissioner") to prove that the claimant is not disabled at Step

20  Five. *See Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001).

21  e.  Step Five:  Adjustment to Other Work

22  If the claimant cannot perform past relevant work, then at Step Five the ALJ determines

23  whether the claimant can adjust to other work based on the claimant's age, education, work

24  experience, and RFC. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At Step Five, the ALJ

25  uses the same RFC assessment from Step Four to determine whether the claimant can adjust to

26  other work. *Id.* §§ 404.1560(c)(1), 416.920(c)(1). If the ALJ determines that "other work exists

27  in significant numbers in the national economy that [the claimant] can do," then the ALJ will find

28  that the claimant is not disabled. *Id.* §§ 404.1560(c)(2), 416.920(c)(2).

9

1    **C.    Procedural History**

2        **1.    SSA Decision**

3        On April 4, 2013, Plaintiff applied for DIB and SSI, alleging that she had been disabled

4    since March 13, 2013.  AR 189–99.  The SSA subsequently denied Plaintiff's applications both

5    initially and upon reconsideration.  AR 112–18, 123–28.  By Plaintiff's request, Administrative

6    Law Judge Richard P. Laverdure held an administrative hearing on October 15, 2014.  AR 27–51,

7    AR 130–31.  Plaintiff testified at the hearing, as did Malcolm J. Brodzinsky, an impartial

8    vocational expert.  AR 29–48.  On December 4, 2014, the ALJ issued an opinion denying

9    Plaintiff's DIB and SSI applications.  AR 10–26.

10        At Step One, the ALJ found that Plaintiff had not been engaged in any substantial gainful

11    activity since the disability onset date, such that a finding of disability was not precluded by work

12    activity.  AR 15.

13        At Step Two, the ALJ determined that Plaintiff had the following severe impairments:

14    major depressive disorder and generalized anxiety disorder.  *Id.*  The ALJ found that these severe

15    impairments "constitute more than slight abnormalities and have had more than a minimal effect

16    on the claimant's ability to perform basic work activities for a continuous period of 12 months."

17    *Id.*  The ALJ also found that Plaintiff had a non-severe impairment of obesity.  AR 16.  However,

18    the ALJ determined that Plaintiff's weight "did not prevent past relevant work and there is no

19    evidence to suggest that, alone or in combination with another medically determinable

20    impairment, obesity significantly limits claimant's ability to do basic work activities."  *Id.*

21    Consequently, the ALJ found no evidentiary support for additional limitations due to obesity.  *Id.*

22    However, the ALJ factored in Plaintiff's obesity as possibly contributing to her depression.  *Id.*

23        At Step Three, the ALJ concluded that Plaintiff did not have an impairment or combination

24    of impairments that met or medically equaled the severity of one of the listed impairments in

25    Appendix 1.  AR 16.  After weighing the medical evidence, the ALJ determined that Plaintiff's

26    "mental impairments, considered singly and in combination, do not meet or medically equal the

27    criteria of listings 12.04 [for affective disorders] and 12.06 [for anxiety-related disorders]."  *Id.*

28    The ALJ evaluated the paragraph B and C criteria (impairment-related functional limitations).  AR

10

1    16–17.  As to the paragraph B criteria, the ALJ found that the Plaintiff had had no episodes of

2    decompensation and only had a moderate restriction or difficulty in the three broad areas of

3    function:  (1) activities of daily living, (2) maintaining social functioning, and (3) maintaining

4    concentration, persistence or pace.  *Id.*  The ALJ ruled that the paragraph B criteria were not

5    satisfied because Plaintiff did not have at least two marked limitations or one marked limitation

6    along with repeated and extended episodes of decompensation.  AR 17.  The ALJ also concluded

7    that the paragraph C criteria were not satisfied because Plaintiff did not have repeated episodes of

8    decompensation, show any propensity for decompensation, or require a highly supportive living

9    arrangement.  *Id.*

10          At Step Four, the ALJ determined that while Plaintiff had the RFC to "perform a full range

11   of work at all exertional levels," she was "limited to simple, repetitive tasks with no public

12   contact."  AR 17.  The ALJ determined that there was "no objective evidence suggesting any

13   exertional limitations on claimant due to obesity or any other physical limitation."  AR 19.  As for

14   mental limitations, the ALJ found that Plaintiff's "medically determinable impairments could

15   reasonably be expected to cause some of the alleged symptoms; however, the claimant's

16   statements concerning the intensity, persistence, and limiting effects of these symptoms are not

17   entirely credible."  *Id.*

18          In making this determination, the ALJ considered the "medical opinions of treating,

19   examining, non-treating, and non-examining physicians," as well as a "non-medical third-party

20   opinion."  AR 19.  The ALJ accorded "great weight" to the opinion from the State-agency medical

21   consultant, Dr. Franco, who determined that Plaintiff had "some mild and moderate work-related

22   limitations arising from her depressive and anxiety disorders."  AR 19.  Furthermore, the ALJ

23   found that the medical testimony from the treating physicians supported Dr. Franco's opinion.  *Id*.

24   The physicians at the Schuman-Liles Clinic found that Plaintiff's appearance, behavior, speech,

25   orientation, insight, judgment, and thought process were all "within normal limits."  *Id.*

26   Moreover, the ALJ gave little weight to Dr. Hipolito's opinion because of inconsistencies within

27   his treatment records, and inconsistencies between his records and other evidence in the record.

28   AR 20.  Although Dr. Hipolito saw Plaintiff four times, the ALJ found that Dr. Hipolito's

11

1    functional assessment "conflict[ed] with his own treatment notes and the notes of Drs. DeValle

2    [sic] and Stauffer," and was not supported by other evidence in the record. *Id.* In addition, the

3    ALJ gave little weight to the opinion of Dr. Bob Kennedy because it was based on a check-the-

4    box form without any articulated rationale. *Id.* The ALJ found that the statements from third

5    parties lacked credibility because they were not signed by anyone and appeared to have been filled

6    out by more than one person. *Id.* The ALJ also noted that Plaintiff's self-evaluation form was

7    "not a medical opinion." *Id.*

8          Based upon Plaintiff's RFC limiting her to no public interaction, the ALJ determined that

9    Plaintiff was unable to work in any of the three occupations in which she had completed past

10   relevant work during the preceding 15 years:  correctional officer, security guard, or fire watcher.

11   AR 20–21. Specifically, each of these occupations necessitated "some interaction with the public"

12   and was therefore incompatible with Plaintiff's RFC limiting her to "no public interaction." AR

13   21.

14         Finally, at Step Five, the ALJ found that Plaintiff could perform other "jobs that exist in

15   significant numbers in the national economy." *Id*. The ALJ used section 204.00 of the Medical

16   Vocational Guidelines as a framework for this determination. AR 22 (citing SSR 85-15). The

17   ALJ found that Plaintiff's age (54), education (high school or more) and skill level (past relevant

18   work at skilled and semi-skilled levels) were "not adverse and would not substantially erode the

19   occupation base." *Id.* Accordingly, the ALJ ruled that Plaintiff was not disabled and therefore did

20   not qualify for DIB or SSI. *Id.*

21         On February 6, 2015, Plaintiff requested review of the ALJ's decision. AR 8–9. On

22   December 22, 2015, the Appeals Council denied Plaintiff's request for review, applying the law

23   that was in effect at the time of the ALJ's ruling. AR 1–5. Thus, the ALJ's decision became the

24   Commissioner's final decision regarding Plaintiff's applications. AR 1.

25              **2. Judicial Appeal**

26         On February 24, 2016, Plaintiff filed this appeal challenging Defendant's final denial of

27   disability benefits, and cross motions for summary judgment are now pending before the Court.

28   Plaintiff contends that the ALJ erroneously evaluated Dr. Franco's opinions, and that substantial

1    evidence does not support the ALJ's evaluation of several of Dr. Hipolito's opinions about

2    Plaintiff's mental limitations. Pl.'s MSJ at 5–15. Defendant responds that the ALJ did not err in

3    either of these respects. Def.'s MSJ at 3–9.

4    **II.    STANDARD OF REVIEW**

5    This Court has jurisdiction to review final decisions of the Commissioner. *See* 42 U.S.C. §

6    405(g) ("The [district] court shall have the power to enter, upon the pleadings and transcript of the

7    record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social

8    Security, with or without remanding the case for a rehearing."). The Court may disturb the

9    Commissioner's decision to deny benefits only if the decision is either not supported by

10   substantial evidence, or is based on legal error. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir.

11   2005). "Substantial evidence means such relevant evidence as a reasonable mind might accept as

12   adequate to support a conclusion. The evidence must be more than a mere scintilla, but may be

13   less than a preponderance." *Molina v. Astrue*, 674 F.3d 1104, 1110–11 (9th Cir. 2012) (internal

14   quotation marks and citations omitted). "Where the evidence is susceptible to more than one

15   rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be

16   upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The court must consider the

17   administrative record as a whole, weighing both the evidence that supports and the evidence that

18   detracts from the ALJ's conclusion. *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989).

19   The ALJ is responsible for making determinations of credibility and for resolving evidentiary

20   ambiguities, including conflicting medical testimony. *Magallanes v. Bowen*, 881 F.2d 747, 750

21   (9th Cir. 1989). Additionally, the court "may not reverse an ALJ's decision on account of an error

22   that is harmless. The burden of showing that an error is harmful normally falls upon the party

23   attacking the agency's determination." *Molina*, 674 F.3d at 1111 (internal quotation marks,

24   brackets, and citations omitted).

25   **III.    DISCUSSION**

26   Here, the Court addresses of both of Plaintiff's challenges to the ALJ's finding of non-

27   disability.

28

13

### A.    Dr. Franco's Opinions

Dr. Franco is the non-examining State-agency psychologist who opined on Plaintiff's application at the reconsideration stage. AR 80–109.[5] Plaintiff contends that the ALJ lacked substantial evidence for his RFC assessment, credibility finding, and Step Five decision because the ALJ erroneously evaluated Dr. Franco's opinions. Pl.'s MSJ at 5. The Court disagrees. The Court finds that the ALJ properly evaluated Dr. Franco's opinion and was not required to adopt its precise wording in his ultimate RFC determination. In addition, the ALJ did not err at Step 5 in concluding that Plaintiff could adjust to other employment because her nonexertional limitations had little or no effect on the occupational base of unskilled work.

The ALJ did not err in evaluating Dr. Franco's opinions. The ALJ gave adequate reasons for placing "great weight" on the opinion of Dr. Franco, pointing to her expertise in disability cases and to the general consistency of her opinion with the record, including medical records indicating that Plaintiff responded well to medications and mental status exams concluding that most criteria were within normal limits. *See* AR 19–20; 20 C.F.R. § 404.1527(c)(6) ("[T]he amount of understanding of our disability programs and their evidentiary requirements that an acceptable medical source has . . . [is a] relevant factor[] that we will consider in deciding the weight to give to a medical opinion."); *id.* § 416.927(c)(6) (same); *id.* § 404.1527(e)(2)(i) (observing that State-agency psychologists are "experts in Social Security disability evaluation"); *id.* § 416.927(e)(2)(i) (same); *id.* § 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."); *id.* § 416.927(c)(4) (same).

Furthermore, the Court is not persuaded by Plaintiff's argument that the ALJ erred by failing to explain why he rejected Dr. Franco's "more restrictive" RFC assessment. *See* Pl.'s MSJ at 8–9. As a threshold matter, the Court is not convinced that there is any meaningful distinction between Plaintiff being limited to "simple, repetitive tasks," AR 17 (ALJ's finding), and "simple

---

[5] Upon reconsideration, Dr. Franco adopted Dr. Mourot's initial-level opinion regarding Plaintiff's RFC. *Compare* AR 91, 106 *with* AR 61, 74. The ALJ evaluated only Dr. Franco's opinion, not Dr. Mourot's identical opinion. AR 19–20. For simplicity, the Court refers only to Dr. Franco's opinion.

1    repetitive 1–2 step tasks," AR 91, 106 (Dr. Franco's opinion). A rational interpretation for the

2    difference in wording is that the ALJ considered "simple" to be inclusive of "1–2 step," and the

3    Court should not disturb this rational interpretation. *See Burch v. Barnhart*, 400 F.3d 676, 679

4    (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the

5    ALJ's conclusion that must be upheld.").

6             Even assuming *arguendo* that the limitation to "simple repetitive 1–2 step tasks" was more

7    restrictive, the ALJ did not err by not fully adopting this assessment. As required, the ALJ

8    engaged in a detailed assessment of Plaintiff's testimony and the medical opinions not only of Dr.

9    Franco, but also of Plaintiff's various treating physicians. *See* AR 17–20; *Tommasetti v. Astrue*,

10   533 F.3d 1035, 1042 (9th Cir. 2008) ("The ALJ must consider all medical opinion evidence.").

11   Given that the ALJ did not rely *exclusively* on Dr. Franco's opinion, his RFC determination

12   unremarkably was not identical to Dr. Franco's opinion. *See* AR 19 (finding Plaintiff's testimony

13   "not entirely credible); AR 19–20 (according "great weight" to Dr. Franco's opinions and to

14   treating records of Drs. Do Valle, Stauffer, and Hipolito); AR 20 (giving "little weight" to

15   opinions of Drs. Hipolito and Kennedy); *id.* (granting "very limited weight" to third party

16   statement). This modest discrepancy resulted not from legal error, but rather from the ALJ

17   properly acting as the "final arbiter" responsible for resolving evidentiary ambiguities and

18   ultimately determining the claimant's RFC. *See Tommasetti*, 533 F.3d at 1041–42. Thus, there is

19   no inconsistency between the ALJ's RFC finding and his declaration that he placed "great weight"

20   on Dr. Franco's opinion. As the Ninth Circuit held, the ALJ is not required "to agree with

21   everything [that a non-treating, non-examining physician] says in order to find that his testimony

22   contains 'substantial evidence'" supporting the ALJ's determination. *See Magallanes v. Bowen*,

23   881 F.2d 747, 753 (9th Cir. 1989). More recently, the Ninth Circuit reaffirmed that the ALJ does

24   "not err by giving 'great weight' to the opinions of [a medical expert], while disregarding portions

25   of his opinions." *Allums v. Colvin*, 649 F. App'x 420, 423 (9th Cir. 2016).[6] Consequently, the

26

27

28   [6] *Allums* and the other unpublished Ninth Circuit decisions cited in this order are not precedent,
     but may be considered for their persuasive value. *See* Fed. R. App. P. 32.1; CTA9 Rule 36-3.

15

1   ALJ did not err by omitting the "1–2 step" term from his RFC assessment.[7]

2       Moreover, the ALJ did not err at Step 5 in concluding that Plaintiff could adjust to other

3   employment because her nonextertional limitations had little or no effect on the occupational base

4   of unskilled work.  The ALJ properly relied on SSR 85-15 given Plaintiff's solely nonexertional

5   limitations.  *See* SSR 85-15, 1985 WL 56857; *Roberts v. Shalala*, 66 F.3d 179, 183 (9th Cir.

6   1995); *Gunderson v. Astrue*, 371 F. App'x 807, 809 (9th Cir. 2010); *Yip v. Barnhart*, 123 F. App'x

7   124, 825 (9th Cir. 2005).  That policy statement describes a two-step framework for assessing

8   whether the claimant can do other work at Step 5.  *See* SSR 85-15, 1985 WL 56857, at *3.  First,

9   the ALJ determines "how much the person's occupational base—the entire exertional span from

10  sedentary work through heavy (or very heavy) work—is reduced by the effects of the

11  nonexertional impairment(s).  This may range from very little to very much, depending on the

12  nature and extent of the impairment(s)." *Id.*  Second, the ALJ assesses "whether the person can be

13  expected to make a vocational adjustment considering the interaction of his or her remaining

14  occupational base with his or her age, education, and work experience. . . .  If, despite the

15  nonexertional impairment(s), an individual has a large potential occupational base, he or she

16  would ordinarily not be found disabled in the absence of extreme adversities in age, education, and

17  work experience." *Id.*

18      The Court holds that the ALJ properly applied SSR 85-15's two-step framework in finding

19  that Plaintiff could successfully adjust to other employment and was therefore not disabled.  At the

20  first step, the ALJ found that Plaintiff's solely nonexertional limitations had "little or no effect on

21  the occupational base of unskilled work at all exertional levels."  *See* AR 20.[8]  This finding was

22

23  _____
    [7] There was another distinction between the ALJ's RFC determination and Dr. Franco's opinion:
    the ALJ found that Plaintiff could engage in "no public contact," whereas Dr. Franco opined that
24  Plaintiff could engage in "limited public and interpersonal contact." *Compare* AR 17 *with* AR 91,
    106.  However, Plaintiff's arguments regarding Dr. Franco's opinion, particularly as to prejudice,
25  primarily rely on the "1–2 step" distinction.  *See* Pl.'s MSJ at 9–12.  Ultimately, the Court finds—
    for essentially the same reasons articulated in the preceding paragraph regarding the "1–2 step"
26  distinction—that the ALJ did not err in reaching his RFC finding regarding Plaintiff's capacity for
    social interaction, even though he placed "great weight" on Dr. Franco's opinion.
27  [8] As SSR 85-15 explains, where the claimant's nonexertional mental impairments prevent her
    "from meeting the mental demands of past relevant work and prevents the transferability of
28  acquired work skills, the final consideration is whether the person can be expected to perform
    *unskilled* work."  *See* SSR 85-15, 1985 WL 56857, at *4 (emphasis added).

16

1    reasonable given Plaintiff's RFC.  Plaintiff's limitation to "simple, repeitive tasks" was consistent

2    with an ability to perform unskilled work, which requires the sustained ability to "understand,

3    carry out, and remember simple instructions."  *See* SSR 85-15, 1985 WL 56857, at \*4; *see also* 20

4    C.F.R. § 404.1521(b)(3) (similar description of "basic work activities"); *id.* § 416.921(b)(3)

5    (same).  Plaintiff's limitation to "no public contact" was also consistent with an ability to perform

6    unskilled work, which requires the sustained ability to "respond appropriately to supervision [and]

7    co-workers"—not to the public.  *See* SSR 85-15, 1985 WL 56857, at \*4; *see also* 20 C.F.R. §

8    404.1521(b)(5) (similar description of "basic work activities"); *id.* § 416.921(b)(5) (same).

9    Likewise, "unskilled jobs at all levels of exertion . . . ordinarily involve dealing primarily with

10   objects, rather than data or people."  *See* SSR 85-15, 1985 WL 56857, at \*4.  Additionally, Dr.

11   Franco's assessment supported the ALJ's finding that Plaintiff could perform the mental demands

12   of unskilled work.  *See* AR 91, 106 (finding of "UNSKILLED").  Since Plaintiff's RFC contained

13   no other limitations, she "retain[ed] the capacity to meet the intellectual and emotional demands"

14   of unskilled work at all exertional levels, and therefore had a "large job base."  *See* SSR 85-15,

15   1985 WL 56857, at \*4.

16        At the second step of SSR 85-15's framework, the ALJ found that Plaintiff's "age,

17   education, and skill level are not adverse and would not substantially erode the occupational base."

18   *See* AR 22.  Plaintiff does not challenge this finding, *see* Pl.'s MSJ at 9–12 (Step 5 challenges),

19   and the Court finds the ALJ's reasoning persuasive, *see* AR 22 ("[Plaintiff's] age at the alleged

20   onset was only 54, she is within the high school or more category educationally, and she has past

21   relevant work at the semi-skilled and skilled levels.").  In short, the ALJ properly found that

22   Plaintiff was not disabled at Step 5 because she could satisfy the intellectual and emotional

23   requirements of unskilled work at all exertional levels, and her age, education, and work

24   experience were not adverse.  *See* SSR 85-15, 1985 WL 56857, at \*4.

25        Finally, the Court rejects Plaintiff's argument that *Rounds v. Commissioner Social Security*

26   *Administration*, 807 F.3d 996 (9th Cir. 2015) requires a contrary conclusion.  *See* Pl.'s MSJ at 11.

27   In *Rounds*, the ALJ found that the plaintiff had the RFC to "perform a full range of work at all

28   exertional levels but with the following nonexertional limitations:  she can perform one to two step

17

1     tasks with no public contact, no teamwork and limited coworker contact." 807 F.3d at 1001. At

2     Step 5, the ALJ found that the plaintiff was not disabled based upon "a vocational expert's

3     testimony that someone with [the plaintiff's] RFC could perform jobs that exist in the national and

4     local economy, including kitchen helper, hand packager, and recycler/reclaimer." *Id.* These jobs

5     required Level 2 reasoning. *Id.* at 1002; *see also* DOT, App. C § 3, 1991 WL 688702 (4th ed.

6     1991) (describing GED reasoning levels). The Ninth Circuit noted "an apparent conflict between

7     [the plaintiff's] RFC, which limits her to performing one- and two-step tasks, and the demands of

8     Level Two reasoning, which requires a person to 'apply commonsense understanding to carry out

9     detailed but uninvolved written and oral instructions.'" *Rounds*, 807 F.3d at 1003. The Court

10    found that SSR 00-4p required the ALJ to "ask the expert to explain the conflict and then

11    determine whether the vocational expert's explanation for the conflict is reasonable before relying

12    on the expert's testimony to reach a disability determination." *Rounds*, 807 F.3d at 1003 (quoting

13    *Zavalin v. Colvin*, 778 F.3d 842, 846 (9th Cir. 2015)). Because the ALJ did not recognize the

14    apparent conflict, and the vocational expert consequently did not address it, there was no way to

15    ascertain whether substantial evidence supported the ALJ's Step 5 finding. *Id.* at 1004.

16    Therefore, the Ninth Circuit remanded for a determination of whether there was "a reasonable

17    explanation to justify relying on the [vocational expert's] testimony." *Id.* at 1004.

18         Here, the apparent conflict at issue in *Rounds* is not present: the ALJ did not find that

19    Plaintiff was limited to 1–2 step tasks, and his Step 5 finding did not rely on any vocational expert

20    testimony stating that Plaintiff could perform particular jobs demanding Level Two reasoning.

21    Therefore, there was no apparent conflict between the vocational expert's testimony and the DOT,

22    no corresponding duty for the ALJ to determine whether there was a reasonable explanation, and

23    no barrier to ascertaining whether the ALJ's Step 5 finding was supported by substantial evidence.

24    Consequently, *Rounds* is not controlling here.

25         **B.    Dr. Hipolito's Opinion**

26         Contrary to Plaintiff's assertion, the ALJ did not err in assigning little weight to Dr.

27    Hipolito's opinion. There are "three types of physicians: (1) those who treat the claimant (treating

28    physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3)

18

1 those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*,

2 81 F.3d 821, 830 (9th Cir. 1995). When the treating physician's opinion is contradicted by

3 another doctor, "the [ALJ] may not reject this opinion without providing 'specific and legitimate

4 reasons' supported by substantial evidence in the record for so doing." *Id*.; *see also Craig v.*

5 *Colvin*, 653 F. App'x 868, 869 (9th Cir. 2016) (citing *Lester* with approval for same proposition).

6 Dr. Hipolito treated Plaintiff four times and filled out a mental source statement opining

7 that Plaintiff had a "moderate" limitation in five areas of work-related mental functions and a

8 "marked" limitation in fifteen other such areas. AR 422–23, 426–41. The ALJ rejected these

9 opinions as inconsistent with Dr. Hipolito's own treatment notes and the opinions of other doctors.

10 AR 20. For example, the ALJ noted that "Dr. Hipolito indicated a 'marked' difficulty in the

11 ability to 'adhere to basic standards of neatness and cleanliness.' However, he and the other

12 doctors all noted that Ms. Huntsberry was neatly groomed and clean on each visit." *Id.* (citation

13 omitted). The ALJ gave specific and legitimate reasons supported by substantial evidence for

14 rejecting Dr. Hipolito's opinions. *See Lester*, 81 F.3d at 830. Therefore, the ALJ did not err on

15 this basis.

16 **IV.    CONCLUSION**

17 For the foregoing reasons, the Court **DENIES** Plaintiff's Motion for Summary Judgment

18 and **GRANTS** Defendant's Motion for Summary Judgment. The ALJ's decision is affirmed. The

19 Clerk is directed to enter judgment in favor of Defendant and close the case.

20 **IT IS SO ORDERED.**

21 Dated: 6/6/2017

22

23 HAYWOOD S. GILLIAM, JR.
United States District Judge

24

25

26

27

28